UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH MOTLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-13221 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Kenneth Motley, an African American man, alleges that his former employer, Defendant Illinois Department of Corrections ("IDOC"), discriminated against him on the basis of race when it disciplined and ultimately fired him. He claims that the accusations against him were false and also that white co-workers who actually did engage in similar conduct were not disciplined or terminated. He has sued IDOC under Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e, *et seq*. Before the Court is IDOC's motion to dismiss Mr. Motley's amended complaint [36]. For the foregoing reasons, the Court denies IDOC's motion. Additionally, the Court *sua sponte* moves to reinstate and grant Mr. Motley's previous motion [5] requesting appointment of counsel.

**BACKGROUND**

**Case Background**

The following facts—which are presumed true for the purpose of deciding this motion—are drawn from Mr. Motley's original complaint, dkt. 1 [hereinafter Original Compl.], his amended complaint, dkt. 34 [hereinafter Am. Compl.], and his representations at oral argument on February 20, 2026.

Mr. Motley began working for IDOC in January 2018. His first few months were spent in training for his position as a corrections officer. During his time at the academy, IDOC twice investigated him based on complaints that Mr. Motley: (1) announced that he was joining the Black Panther Party; (2) made racially inappropriate comments on an instructor evaluation form; (3) made a racially and sexually inappropriate comment to a fellow academy cadet, a white woman; and (4) made an inappropriate comment using profanity in an incident report. Mr. Motley disputed all four accusations. First, he never said that he was joining the Black Panther Party; he instead announced his intention to see the Marvel movie *Black Panther*, which premiered that day. Many other cadets at the academy were also talking about the movie, which was quite prominent in popular culture at the time. Second, the term used in the instructor evaluation "was neither inappropriate nor racial" but rather "was a term used to praise his supervisor." Am. Compl. *8 (ex. A). Third, the allegedly racially and sexually inappropriate comment to his white, female, fellow cadet was a joking statement between friends, and the cadet did not take offense. Fourth, the allegedly profane statement was Mr. Motley's comment that he completed an incident report to "cover my ass," a derivation of the extremely common bureaucratic slang "CYA" ("cover your ass"). That term had been taught to Mr. Motley by a white trainer at the academy, who used it frequently during his lessons. In the end, both investigations cleared Mr. Motley of any wrongdoing.

In March 2018, after graduating from the academy, IDOC assigned Mr. Motley to work at Pontiac Correctional Center. He was the only African American cadet from his class assigned to Pontiac, and he was also "the only African American on his shift at his assigned location at Pontiac." *Id.* While working at Pontiac as a corrections officer, Mr. Motley observed white co-workers frequently making sexually offensive comments, but they were not disciplined for their conduct. Mr. Motley also reports that a white, female co-worker deliberately permitted inmates to fondle her; when her supervisors found out, they did not fire her but instead transferred her to a different position. During

– 2 –

his time at Pontiac, Mr. Motley had no disciplinary infractions and met all of IDOC's legitimate expectations.

On or about April 20, 2018, and about a month after he had applied for a promotion to a sergeant position, the warden at Pontiac opened a third investigation into Mr. Motley's conduct at the academy. This third investigation resulted in Mr. Motley being suspended for thirty days. On June 18, 2018, the day after his suspension concluded and about five days before the end of his probationary period, IDOC fired Mr. Motley.

About nine months later, in March 2019, Mr. Motley was informed that he could reapply to be an IDOC corrections officer. He retook the entrance exam, which he had previously passed in January 2018. However, IDOC told Mr. Motley that, this time, he had failed the examination. Mr. Motley alleges that he actually did pass the test, and that IDOC lied to continue to deny him employment.

**Procedural History**

After being fired, Mr. Motley initiated a complaint with the Equal Employment Opportunity Commission ("EEOC"). Resolution of this complaint took significantly longer than normal, apparently due to requests from IDOC for additional time to respond, and also due to two changes in the relevant EEOC supervisor—with each new supervisor further delaying resolution in order to have more time to become familiar with the case. The COVID-19 global pandemic likely also played a role in delaying resolution. In 2024, about six years after being fired, Mr. Motley petitioned the EEOC for a right-to-sue letter. The agency issued that letter to Mr. Motley on October 10, 2024.

On December 26, 2024—within ninety days of receiving his right-to-sue letter—Mr. Motley filed his initial complaint in the instant case. Although an attorney represented Mr. Motley during the EEOC process, he has proceeded *pro se* before this Court. For his complaint, Mr. Motley used a form provided by the Northern District of Illinois titled "Complaint for Violation of Constitutional Rights."

– 3 –

The form stated (in pre-printed text) that it brought claims for violation of constitutional rights under 42 U.S.C. §§ 1983, 1985, and 1986. Mr. Motley did not refer to any of those statutes in text that he wrote himself. However, he did attach a copy of his right-to-sue letter, which stated that he could bring a case under Title VII. Original Compl. *9 (ex. A). Additionally, on his civil cover sheet, Mr. Motley wrote that his cause of action derived from 42 U.S.C. § 2000e *et seq.*, which is the location of Title VII in the U.S. Code. Dkt. 2.

IDOC moved to dismiss Mr. Motley's original complaint, arguing (for multiple reasons) that IDOC was not a proper defendant under § 1983. Dkt. 16. This was a correct statement of the law, and on September 2, 2025, this Court dismissed Mr. Motley's original complaint with prejudice. Dkt. 28. Shortly afterward, Mr. Motley filed two motions to reconsider, dkt. 30, 32, in which he stated that his complaint's citation of 42 U.S.C. § 1983 was a clerical error based on the fact that the Clerk's office provided him with a form for a constitutional rights complaint, rather than a form for an employment dispute complaint. Dkt. 30 at *1. Mr. Motley, who has no legal training, did not realize that the form provided to him did not reference the correct statute. *Id.* at *1–2. However, he argued, his complaint clearly stated a claim under Title VII, which was further evinced by his attachment of the EEOC right-to-sue letter. *Id.* In his request for relief, Mr. Motley asked the Court to reconsider its dismissal order and to "Reinstate Plaintiff's case under 42 U.S.C. § 2000e (Title VII)[.]" *Id.* at *3.

The Court granted Mr. Motley's motion pursuant to Federal Rule of Civil Procedure 60(a). Dkt. 33. In vacating its dismissal, the Court stated that it "did not intend to preclude Plaintiff from bringing different, more appropriate causes of action under the same set of facts" and granted Mr. Motley leave to file an amended complaint. *Id.* Mr. Motley timely filed his amended complaint, to which IDOC responded with a second motion to dismiss. Dkt. 36. Following the parties' timely submission of their respective response and reply briefs, the Court held oral arguments on February 20, 2026, after which the motion became ripe for adjudication.

**LEGAL STANDARD**

IDOC has moved to dismiss Mr. Motley's amended complaint under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). To survive a motion to dismiss, the plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**DISCUSSION**

IDOC advances two primary arguments in support of its motion to dismiss Mr. Motley's amended complaint. First, it claims that his Title VII claims are time barred because he did not file them within ninety days of receiving his right-to-sue letter from the EEOC. Second, IDOC claims that Mr. Motley has failed to plausibly allege that he suffered an adverse employment action deriving from racial discrimination. Both arguments fall well short of the mark.

**I.  Timeliness**

Any claim arising under Title VII must be brought within ninety days of receiving a right-to-sue letter from the EEOC or Department of Justice. 42 U.S.C. § 2000e-5(f)(1); *Fort Bend Cty. v. Davis*, 587 U.S. 541, 545 (2019). Failure to do so results in the claim being barred by the statute of limitations, no matter the merits of the claim. It is undisputed that Mr. Motley received his right-to-sue letter on October 10, 2024. IDOC argues that Mr. Motley did not formally invoke Title VII until he filed his amended complaint on October 7, 2025, almost a year later. IDOC posits that Mr. Motley's Title VII claims are therefore barred by the statute of limitations and must be dismissed. But IDOC is incorrect. While it is true that Mr. Motley filed his amended complaint outside of the ninety-day window, it is

also undisputed that he filed his original complaint within that window. And, contrary to IDOC's contention, that original complaint *did* state a claim arising under Title VII. The Court finds that Mr. Motley timely filed his Title VII claim on December 26, 2024, when he filed his original complaint, and that the amended complaint therefore relates back to the original under Federal Rule of Civil Procedure 15(c).

IDOC argues that Mr. Motley brought his original complaint under § 1983. Dkt. 37 at *4 [hereinafter Def. Br.]. That is a true enough statement, but also incomplete, as the complaint also contained allegations of other statutory violations. On the first page of the complaint, the pre-printed form stated that Mr. Motley brought charges under not only § 1983, but also 42 U.S.C. §§ 1985 and 1986. Original Compl. *1. The complaint also contained Mr. Motley's right-to-sue letter as an exhibit, and the letter specifically mentioned Title VII, 42 U.S.C. § 2000e. *Id.* at *9 (ex. A). It is boilerplate civil procedure that exhibits to a complaint are part of the complaint. Fed. R. Civ. P. 10(c). Indeed, courts sometimes afford greater consideration to a complaint's exhibits than to the pleading itself. *See, e.g., Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (if a complaint's exhibit contradicts the pleading on a factual matter, the exhibit often controls). Additionally, the civil cover sheet filed with the complaint stated that Mr. Motley alleged a violation of 42 U.S.C. § 2000e. Dkt. 2. The Court therefore finds that Mr. Motley's original complaint arose under Title VII, in addition to § 1983 (and also §§ 1985 and 1986).

Further, even if Mr. Motley had not explicitly invoked Title VII, the Court would still find that his original complaint alleged a claim under Title VII. A plaintiff only needs to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not need to specifically invoke the appropriate law (or, for that matter, any law) in order to raise a claim for relief under Rule 8. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992) (citing *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992)). And that is especially the

case for *pro se* plaintiffs, whose complaints are read liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To hold otherwise would be to drag civil procedure back to the obsessively formalistic world of writ pleading that the Federal Rules rightly abandoned nearly a century ago. Our current system of notice pleading only requires sufficient factual allegations to put defendants on notice of the conduct they must defend. As the Seventh Circuit has explained:

> Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of.... Any district judge (for that matter, any defendant) tempted to write "this complaint is deficient because it does not contain..." should stop and think: What rule of law requires a complaint to contain that allegation?

*Doe v. Smith*, 429 F.3d 706, 708 (7th Cir.2005). Here, Mr. Motley's allegations in his original complaint clearly established an employment dispute (which IDOC had already been litigating administratively for several years at the time of filing). That alone would have been enough to put IDOC on notice of the conduct it must defend. The fact that Mr. Motley went further and specifically invoked Title VII should remove all doubt.

Under Rule 15(c), "An amendment to a pleading relates back to the date of the original pleading… [if] the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out… in the original pleading." Here, the amended complaint alleges exactly the same conduct, transactions and occurrences as were present in the original complaint; as such, the amended complaint clearly relates back to the original. IDOC presents an extremely technical argument against relating back, rooted in the assertion that Mr. Motley's original complaint only presented an untimely claim under § 1983. IDOC cites Seventh Circuit precedent that an untimely complaint cannot offer a "life-line" to a later also-untimely amended complaint. Def. Br. *5 (quoting *Henderson v. Bolanda*, 253 F.3d 928, 932 (7th Cir. 2001)). The Court is skeptical of the applicability of

this precedent, even if Mr. Motley's original complaint was entirely untimely.[1] But given that the original complaint *was not* untimely with respect to its Title VII claim, IDOC's argument is inapposite. Mr. Motley properly and timely raised his Title VII claim in his original complaint, and the amended complaint easily relates back to it under Rule 15(c). As such, timeliness provides no reason to dismiss Mr. Motley's claims.

## II. Stating a Claim

IDOC also argues that Mr. Motley's amended complaint should be dismissed for failure to adequately state a claim of employment discrimination. Def. Br. *5–7. The agency contends that Mr. Motley has not sufficiently connected his termination or the denial of his second application to racial bias. In particular, IDOC argues based on *Saud v. Depaul Univ.*, 154 F.4th 563, 570–72 (7th Cir. 2025), that it fired Mr. Motley following the results of an investigation, "a race-neutral and legitimate basis for Plaintiff's termination," Def. Br. *6. IDOC apparently believes that simply stating that an investigation occurred is sufficient to plead a plaintiff out of court. *Id.* at *7 (citing *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016)). But IDOC reads *Saud* far too broadly. That case did not advance the dubious proposition that all investigations are legitimate. It simply affirmed a *summary judgment* ruling that, on the basis of the evidence before the district court, the investigation in *that* case was a legitimate and race-neutral affair. *Saud*, 154 F.4th at 570–72. Here, at the *motion to dismiss* stage, there

---

[1] *Henderson* considered the case of a plaintiff who initially filed untimely state law claims, and who later filed a materially different amended complaint with § 1983 claims, which were by that point also untimely. 253 F.3d at 931. After removal, the district court dismissed the amended complaint as untimely and rejected the plaintiff's argument that the original complaint had adequately stated a § 1983 claim in part because "it was clear—on the face of the original complaint—that plaintiff was seeking only state court relief." *Henderson v. Vill. of Dixmoor*, 99 F. Supp. 2d 940, 945 (N.D. Ill. 2000) (Alesia, J). Mr. Motley's case is markedly different. His case has always been in federal court, and his amended complaint changed almost nothing about his pleading, except that it was now presented via a form that referenced Title VII rather than § 1983. Additionally, the Court found in deciding Mr. Motley's motion to reconsider that Mr. Motley had intended to file a Title VII complaint. Dkt. 33. Thus, even if Mr. Motley's original complaint could not possibly be construed to state a Title VII claim—which is not the case—the Court would still be skeptical of *Henderson*'s applicability.

is no evidence yet in the record showing anything about the investigations other than their initiations and their outcomes.

What *is* before the Court—and which IDOC omits from its briefs—are Mr. Motley's allegations that he, the only African American corrections officer on his shift at Pontiac, was singled out multiple times relating to conduct in which white co-workers also engaged but for which IDOC did not discipline them. That is more than enough to state a claim of racial discrimination. Indeed, the same *Saud* district court that IDOC invokes for its summary judgment decision also denied a motion to dismiss the plaintiff's § 1981 claim[2] on the basis of what appears to be less evidence of racial discrimination than Mr. Motley has presented. *Saud v. DePaul Univ.*, No. 19-CV-3945, 2019 WL 5577239, at *6 (N.D. Ill. Oct. 29, 2019) (Dow, J.). As the *Saud* district court noted, the bar that a Title VII plaintiff must meet to survive a motion to dismiss is "low." *Id.* Indeed, "all the complaint needs to say is that Plaintiff was fired, or not rehired, because of his race." *Id.* (citing *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); and *Sroga v. City of Chicago*, 2019 WL 5208870, at *5 (N.D. Ill. Oct. 16, 2019) (Kendall, J.).

IDOC's efforts to import a summary judgment standard into its Rule 12(b)(6) motion are ill considered. Mr. Motley has met and exceeded the low bar necessary to survive a motion to dismiss a claim of racial discrimination. The Court therefore denies IDOC's motion to dismiss Mr. Motley's amended complaint.

## III. Appointment of Counsel

Concurrently with his original complaint, Mr. Motley filed motions to proceed *in forma pauperis* ("IFP") and for appointment of counsel. Dkt. 4, 5. The Court granted the IFP motion but denied the

---

[2] The Seventh Circuit notes that "the methods of proof and elements of [a Section 1981] case are essentially identical" to those in a Title VII case. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009).

motion for appointment of counsel without prejudice. Dkt. 9. Because of the scarcity of private attorneys willing to be assigned as counsel for a *pro se* and IFP plaintiff, it is this Court's usual practice to deny such motions until a plaintiff has proven that their case contains a legal claim over which this Court has jurisdiction. At this point, Mr. Motley has sufficiently shown that he has pled a valid claim. Indeed, Mr. Motley has admirably litigated his case thus far. Despite not being a lawyer, he successfully convinced this Court to reconsider its previous dismissal—a dauntingly difficult task for anyone. And he has now survived a motion to dismiss. As this case moves toward discovery, the Court finds that it is now appropriate to provide Mr. Motley with an attorney. The Court therefore moves *sua sponte* to reinstate Mr. Motley's previous motion for appointment of counsel [5] and now grants that motion. The Court will file further details on the docket once an attorney has been appointed.

## CONCLUSION

The Court denies IDOC's motion to dismiss [36]. Additionally, on its own motion, the Court reinstates and grants Mr. Motley's motion requesting the appointment of counsel [5].

**IT IS SO ORDERED.**

Date: 2/23/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge